IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00618-WDM-MJW

FRANK DENETCLAW,

    Plaintiff,

v.

THOUTT BROTHERS CONCRETE CONTRACTORS, INC., a Colorado corporation,

    Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

Miller, J.

This matter is before me on a motion for summary judgment filed January 15, 2007 and a motion to strike affidavit filed March 26, 2007 by Defendant Thoutt Brothers Concrete Contractors, Inc. For the reasons that follow, the motion for summary judgment will be granted and the motion to strike affidavit will be denied as moot.

### Background

This case arises out of Defendant's discharge of Plaintiff Frank Denetclaw on April 12, 2005. Prior to this discharge, Plaintiff was employed by Defendant beginning in December 1999. There were no relevant issues between Plaintiff and Defendant until February 2005 when Plaintiff filed an Equal Employment Opportunity Commission (EEOC) charge alleging discrimination based on sex, age, and retaliation (first EEOC charge). Specifically, Plaintiff alleged that C.J. Thoutt, a supervisor, gave better work

PDF Final

assignments to younger women and suspended Plaintiff after an altercation with a younger woman.  After receiving a right to sue letter based on the first EEOC charge, Plaintiff did not file a civil suit.  Then, on May 5, 2005, Plaintiff filed another EEOC charge (second EEOC charge), this time alleging retaliation for filing his first EEOC charge; hostile work environment; and discrimination based on race, sex, and age.  A right-to-sue letter was mailed on December 30, 2005 although, according to Plaintiff's testimony, he did not receive the letter until January 4, 2006.  Pursuant to this right-to-sue letter Plaintiff filed this action on April 4, 2006.

The facts leading up to Plaintiff's discharge are at issue in this case as Defendant offers them as legitimate, non-discriminatory reasons for Plaintiff's discharge.  After Plaintiff filed his first EEOC charge, Plaintiff had a meeting with Brian Spahn, Plaintiff's supervisor, and Kim Olkjer, a Traffic Control Supervisor who regularly worked with Plaintiff.  Many of the issues that were discussed during this meeting are in dispute, but it is clear that Spahn explained to Plaintiff that Olkjer was his immediate supervisor and that Plaintiff was required to follow her orders.

It came to Spahn's attention that during the week of March 28, 2005 to April 2, 2005 Plaintiff filled out his timecard to reflect his arrival at work at 6:00 am each day—a half hour earlier than the work day actually started.  However, he had only been authorized to arrive to work early for one day during this period.  After consulting with Plaintiff, Spahn resolved the issue by changing Plaintiff's timecards to reflect the time that Plaintiff was authorized to work.

Next, Defendant alleges that on April 5, 2005, Plaintiff incorrectly set up traffic

control barricades and was late to work. Defendant contends that Spahn received a phone call from an Inspector telling him of the incorrect set up and a missing flagger. Plaintiff denies that the barricades were set up improperly. However, the parties agree that Spahn contacted Plaintiff to let him know of the Inspector's complaint. Defendant also contends that when Olkjer told Plaintiff to correct the barricades and begin flagging, he responded by putting his hand in front of her face and driving off without complying. Plaintiff denies that this incident occurred.

The parties are also in disagreement regarding the events of April 9, 2005. On April 8, 2005, Plaintiff, along with Juan Martinez and Richard Bueno, agreed to work overtime on Saturday, April 9, 2005. Defendant contends that on April 9, 2005 Plaintiff arrived late to work, improperly set up only a few barricades, did not perform his flagging duties, left work early, and failed to return barricades to the rental company. Plaintiff contends that he was not late, was doing the job that he was assigned, left early because he had only agreed to work until a certain time, and was not the person responsible for returning the barricades.

The final issue between the parties occurred on Monday, April 11, 2005 when Plaintiff reported to work even though it was during a snowstorm and Defendant was not in operation that day. Defendant contends that this was in violation of its bad weather policy of calling prior to arriving at work when there is bad weather and that Plaintiff had been made aware of the policy in the March 2, 2005 meeting. Plaintiff contends that there is no bad weather policy and that others have arrived to work on bad weather days and were not punished. After Defendant informed Plaintiff that it did

not have work for Plaintiff that day due to the bad weather, Plaintiff demanded to be paid for the time that he spent waiting at the jobsite.

The next day, Plaintiff was called into a meeting with Spahn, Olkjer, Martinez, and Bueno. During this meeting Spahn terminated Plaintiff and Martinez. Defendant asserts that Spahn set forth the reasons for Plaintiff's dismissal during this time. Plaintiff denies that he was provided reasons for his termination.

### Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id*.

A plaintiff alleging employment discrimination may prove intentional discrimination directly or indirectly. Under the direct approach, plaintiffs present direct evidence that their status as a protected person was the reason for the adverse

employment action. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996) (quoting *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1409 (7th Cir. 1984)). However, more typically, cases are brought under the indirect analysis set forth in *McDonnell Douglas Corp v. Green*, which provides a burden-shifting framework for assessing indirect, or circumstantial, evidence. 411 U.S. 792, 802-804 (1973); *see generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-508 (1993); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

Under the *McDonnell Douglas* framework, plaintiffs bear the initial burden of presenting a *prima facie* case of discrimination. *Kendrick*, 220 F.3d at 1226. The essential purpose of the *prima facie* test is to eliminate "the most common nondiscriminatory reasons for" the employment action. *See id.* at 1227 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)); *see also St. Mary's Honor Center*, 509 U.S. at 506 (*prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material)). If plaintiffs establish a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant presents such a reason, plaintiffs bear the "ultimate burden" of showing that these proffered reasons are a pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

Discussion

Plaintiff's case may be reduced to essentially three separate claims: (1) discriminatory discharge based on race, age, and sex; (2) retaliatory discharge based on Plaintiff's filing of an EEOC charge; and (3) hostile work environment. Defendant raises issues of timeliness and subject matter jurisdiction.

1.  Timeliness

Defendant argues that Plaintiff's claims are time-barred because he did not file suit within ninety days of receiving a right-to-sue letter. *See* 42 U.S.C. § 2000e (requiring a plaintiff to sue within ninety days of notice from the Commission that they are not pursuing a civil action). This action was filed on April 4, 2006. It is undisputed that this action may not be based on events alleged in Plaintiff's first EEOC charge because the right-to-sue letter for that charge was sent on July 28, 2005, more than eight months prior to the commencement of this action.

It is, however, disputed whether the events contained in Plaintiff's second EEOC charge are also time-barred. The right to sue letter for this charge was sent on December 30, 2005. Given the April 4, 2006 filing date, if Plaintiff received the right-to-sue letter on January 3, 2006, then this action is time-barred. On the other hand, if Plaintiff received the letter on January 4, 2006 or later, then the action is timely. The complaint states that Plaintiff received the letter on January 4, 2006. However, in the copy of the complaint served on Defendant, the complaint states that Plaintiff received the letter on January 3, 2006. Plaintiff argues that this was a mistake and that the copy

served on Defendant was a draft copy of the complaint.[1]  Plaintiff testified in his deposition that he received the complaint "around the 4th or the 5th" and specifically states that he did not receive the letter on the 3rd.  (Denetclaw Dep. 86:1–15.)

I find that there is at least a genuine issue of fact when Plaintiff received the right-to-sue letter.  Plaintiff has testified about the day that he received the letter but is unsure of the actual date of receipt.  The complaint filed with this court states one day of receipt while the complaint served on Defendant states another date of receipt.  Therefore, because there is at least a genuine issue of fact whether this action is timely, summary judgment on this ground would not be appropriate.[2]

2.  <u>Exhaustion of Administrative Remedies</u>

Defendant argues that this Court may not hear some of Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies.  Generally, a plaintiff must exhaust administrative remedies with the EEOC prior to filing a Title VII claim in federal district court.[3]  *Simms v. Oklahoma ex. rel., Dep't of Mental Health and*

---

[1] In conjunction with his response brief, Plaintiff filed an affidavit of his attorney attesting to the mistake contained in the complaint sent to Defendant regarding the date Plaintiff' received the right-to-sue letter.  Defendant filed a motion to strike this affidavit alleging that it violated the rules of professional conduct.  I have not used this motion when making my decision here as Plaintiff argues the mistake in his response brief and the affidavit is unnecessary in the exhaustion of remedies determination.  In accordance with this Order, the motion to strike is denied as moot.

[2] I note that applying the five-day presumption would also make filing timely given the December 30, 20005 mailing date.

[3] Although *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), held that exhaustion of administrative remedies was not a jurisdictional requirement to suit in federal court, the Tenth Circuit has continued to view exhaustion of remedies as a jurisdictional requirement.  *See Jones v. Runyon*, 91 F.3d 1398, 1400 n.1 (10th Cir.

*Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); *Jones v. Runyon*, 91 F.3d 1398, 1400 n.1 (10th Cir. 1996). "Thus, a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Simms*, 165 F.3d at 1326. Furthermore, "each discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. V. Morgan*, 536 U.S. 101, 110–13 (2002)).[4] The exhaustion "requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004). The claim in federal district court "is generally limited by the scope of the investigation that can reasonably be expected to follow the charge of discrimination" in the EEOC charge. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (citing

---

1996) (discussing Tenth Circuit authority that exhaustion of remedies is a jurisdictional requirement). Other circuits have interpreted the *Zipes* decision to mean that exhaustion of administrative remedies is a "condition precedent or an affirmative defense that can be waived if it is not asserted by the defendant." *Id.* In this case, just as in *Jones*, the distinction does not matter as Defendant has argued that Plaintiff failed to exhaust administrative remedies. *See id.*

[4] This is a change from prior Tenth Circuit precedent which held that a judicial complaint may include discriminatory acts not included in the EEOC charge if those acts were "like or reasonably related to" the allegations in the EEOC charge. *Martinez,* 347 F.3d at 1210 (discussing the impact of *Morgan* on the "continuing violations" doctrine).

*Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994) and *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1416 n.7 (10th Cir. 1993)).

The EEOC sets forth that a charge should include the names of the person making the charge and the person against whom the charge is made and a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 20 C.F.R. § 1601.12(a)(1)–(3). "[A] charge is sufficient when the Commissioner receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.* § 1601.12(b). When determining if an EEOC charge is sufficient, I must liberally construe the EEOC charge. *Foster*, 365 F.3d at 1195 (citations omitted).

Defendant argues that this Court does not have jurisdiction over Plaintiff's discriminatory discharge claim based on race, sex, and age or over Plaintiff's hostile work environment claim. Defendant argues that the second EEOC charge has insufficient information to lead to additional evidence during an EEOC investigation or to put Defendant on notice of the charge of discrimination. *See Foster*, 365 F.3d at1195. Specifically, Defendant points out that the EEOC charge does not contain information regarding the alleged harasser or an approximate time period that the discrimination occurred. *See Gunnel v. Utah Valley State College*, 152 F.3d 1253,1260 (10th Cir. 1998) (holding an allegation that "identifie[d] the type of discrimination complained of, the alleged harasser, and an approximate time period" was sufficient to satisfy the notice and content requirements). Although *Gunnel* is instructive on the

amount of information that is sufficient, it does not set forth the bare minimum required to meet the requirements. *Id.* The EEOC does, however, require that the charge identify the parties, give pertinent dates, and describe generally the unlawful discrimination practices. *See* 20 C.F.R. § § 1601.12(a)(1)–(3), (b).

In his second EEOC charge, Plaintiff states that he has been discriminated against on account of his race (Native American), his age (53), and his sex (male) and checks the boxes for race, age, and sex discrimination. (EEOC charge dated May 10, 2005.) He also alleges that he was "subjected to a hostile work environment" and "'injun remarks'" and "told to do an Indian rain dance" on hot days. *Id.* The charge states that the discrimination occurred on November 12, 2005—the day of his discharge. However, the EEOC charge does not specifically list any parties involved in the alleged discrimination and only lists only one date that the alleged unlawful employment practices took place—the day of Plaintiff's discharge.

With respect to the hostile work environment claim, Plaintiff failed in the second EEOC charge to "identify the parties," give pertinent dates, or even to generally describe the practices complained of. *See* 20 C.F.R. § § 1601.12(a)(1)–(3), (b). Furthermore, the EEOC charge allegations do not provide sufficient notice to the Defendant about these claims of unlawful employment practices nor provide a starting point for Defendant or the EEOC to investigate the claims and do not show that the alleged unlawful practices even took place within the limitations period. *See Duncan v. Manager, Dept' of Safety, et. al.*, 397 F.3d 1300, 1308 ) (10th Cir. 2005) ("Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory

conduct."). Therefore, I find that Plaintiff failed to exhaust his administrative remedies with respect to the hostile work environment claim. Accordingly, this Court does not have jurisdiction over Plaintiff's claim of hostile work environment.

The same analysis applied above to the hostile work environment claim can also be applied to the discriminatory discharge claim based on race, age, and sex. However, because I find that Plaintiff has failed to meet his Rule 56(e) burden on this claim, I assume for purposes of this motion that he exhausted his administrative remedies with respect to this claim. Furthermore, although Defendant does not argue it, because I find that Plaintiff failed to meet his Rule 56(e) burden with respect to his retaliatory discharge claim, I also assume for purposes of this motion that Plaintiff exhausted his remedies for this claim. In sum, I conclude that Plaintiff has exhausted his administrative remedies with respect to discriminatory discharge and retaliatory discharge claims, but not with respect to his hostile work environment claim.

3.  Discriminatory Discharge Based on Race, Age, and Sex

The parties do not dispute for summary judgment purposes that Plaintiff has established a *prima facie* case of discriminatory discharge.[5] The parties agree that Plaintiff, a fifty-three year-old Native American male was discharged from his employment on April 12, 2005 and the job was not eliminated subsequent to the discharge. Under the *McDonnell Douglas* framework, the burden then shifts to

---

[5] A *prima facie* case for discriminatory discharge is established when the plaintiff demonstrates that (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, Plaintiff was discharged from the job; and (4) the job was not eliminated after Plaintiff's discharge. *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999).

Defendant to articulate legitimate, non-discriminatory reasons for the discharge. *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). The parties also do not dispute that Defendant has set forth a number of non-discriminatory reasons for Plaintiff's discharge. Defendant alleges that Plaintiff was discharged for (1) falsifying timecards during the week of March 28, 2005 to April 2, 2005; (2) failure to properly set up traffic control barricades and conduct flagging on April 5, 2005; (3) insubordination to a superior on April 5, 2005; (4) failure to properly conduct set up traffic control and conduct flagging resulting in a safety hazard and failure to return barricades to the rental company April 9, 2005; (5) arriving to work late and leaving work early on April 9, 2005; and (6) failure to comply with Defendant's bad weather policy on April 11, 2005. (Mtn. Summ. J. at 17.)

Defendant, having met the burden of articulating non-discriminatory reasons for the discharge, is entitled to summary judgment unless Plaintiff can demonstrate that the reasons set forth are merely pretext for unlawful discrimination. To show pretext, a plaintiff must demonstrate that the defendant was more likely motivated by a discriminatory reason or that its proffered reason "is unworthy of credence." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000) (quotation omitted). Three typical methods of showing pretext are: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision). *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220,

1230 (10th Cir. 2000). Pretext may be shown "'by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004). However, the facts must be viewed from the perspective of the person making the decision (*i.e.*, Spahn, the person terminating Plaintiff's employment). *Id.*; *Jones v. Denver Post Corp.*, 203 F.3d 748, 754 (10th Cir. 2000) ("'It is the manager's perception of the employee's performance that is relevant, not the plaintiff's subjective evaluation of his own relative performance.'" (citing *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996))).

In this case, Plaintiff argues that Defendant's reasons for his discharge are false. With respect to Defendant's first reason, Plaintiff asserts that the issue was resolved with Spahn at the time that it occurred. With respect to Defendant's second and fourth reasons, Plaintiff merely denies that there was a problem with the barricades and claims that improper setup is not a dischargeable offense. He fails to address the alleged failure to conduct flagging on April 5, 2005 and April 9, 2005, but does assert that he was not responsible for returning the barricades on April 9, 2005. Plaintiff refutes Defendant's fifth reason by simply contesting the truth—he asserts that he did not arrive late and was scheduled to leave early. As for Defendant's third reason, insubordination to a Olkjer, Plaintiff simply denies that he was insubordinate and asserts that Olkjer was not his supervisor and, therefore, he could not be insubordinate to her. Finally, with respect to Defendant's sixth reason, Plaintiff asserts that he did not

violate a policy by showing up for work on a bad weather day and that this is not a dischargeable offense. Furthermore, he argues that another employee also showed up for work on April 11, 2005 and was not discharged.

However, Plaintiff does not address the issue of what Spahn believed about Plaintiff's work performance or the alleged incidents occurring on April 5, 9, and 11, 2005. Because Spahn was the person to make the decision to terminate Plaintiff, his impression of Plaintiff's work performance is the only relevant inquiry to determine if Defendant's reasons for the discharge are pretext. *Rivera*, 365 F.3d at 925; *Jones v. Denver Post Corp.*, 203 F.3d at 754. Plaintiff has not argued or shown that Spahn had any reason to doubt the truth of the reasons articulated for Plaintiff's discharge nor that Olkjer or the Inspector did not actually report the alleged incidents to Spahn. Therefore, I conclude that Spahn reasonably believed the incidents occurred and that this formed the basis for Plaintiff's termination. Plaintiff has not demonstrated pretext by showing that Defendant's legitimate reasons for discharge are false.

Plaintiff also asserts that pretext is demonstrated because Defendant failed to act in a manner consistent with an unwritten policy or company practice. Although poorly developed, Plaintiff appears to be arguing that Defendant had a company policy of not firing people for showing up to work on a bad weather day or for failing to show up to work on time. To support this argument, Plaintiff points to Martinez, who he alleges was not fired for showing up to work on a bad weather day. However, Defendant has asserted that Martinez was, in fact, fired for this issue and for leaving work early. (Spahn Aff. ¶ 7.) Plaintiff also asserts that another employee did not show

up for work and was not fired. Defendants argue that this employee called in to work to let them know that he had car trouble and that this point distinguishes the situation from that of Plaintiff. Furthermore, Defendants assert that the reason Plaintiff was discharged was the combination of many incidents in a short amount of time. Plaintiff does not respond to this argument nor has he alleged specific facts to create a genuine issue of fact as to the circumstances surrounding Martinez or Bueno. Therefore, I find that Plaintiff has failed to demonstrate that Defendant's proffered reasons for termination are pretextual based on a failure to comply with company policy or practice. Defendant's motion for summary judgment with respect to the discriminatory discharge claim is granted.

4.  Retaliatory Discharge

Plaintiff also claims that he was discharged in retaliation for filing an EEOC charge. To establish a *prima facie* case of retaliatory discharge, Plaintiff must show that (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Kendrick*, 220 F.3d 1220, 1234 (10th Cir. 2000). "[T]o establish a "causal connection," plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity."[6] *Williams v. Rice*, 983 F2d 177, 181 (10th Cir. 1993) (citing *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 635 (10th Cir. 1988)).

---

[6] I note that the analysis here of what Spahn, the person who terminated Plaintiff, knew is similar to the analysis applied in Section 3, *supra*, addressing Plaintiff's discriminatory discharge claim.

It is not in dispute that Plaintiff engaged in protected activity when he filed his first EEOC charge or that he was discharged (an adverse employment action). Defendant argues that Plaintiff has not established a *prima facie* case for retaliatory discharge because Plaintiff has not shown the third required element of a causal connection. Specifically, Defendant points to the fact that Plaintiff has not established that Spahn, the supervisor who terminated Plaintiff's employment, had any knowledge of Plaintiff's first EEOC charge. To support its argument, Defendant has produced sworn testimony from Matthew Thoutt (M. Thoutt Dep. 34:24–36:23), C.J. Thoutt (C.J. Thoutt Dep. 29:15–30:24); Spahn (Spahn Aff. ¶ 9); and Olkjer (Olkjer Aff. ¶ 8) asserting that neither Spahn nor Olkjer had knowledge of Plaintiff's first EEOC charge. In response, Plaintiff merely argues that Spahn could have gained knowledge about the EEOC charge at some point before he terminated Plaintiff either because someone told him or because he overheard it. However, "'conclusory allegations without specific supporting facts have no probative value.'" *Nichols v. Hurley*, 921 F.2d 1101, 1113 (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)); *see Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004). Plaintiff's hypothetical allegation that Spahn could have gained knowledge is insufficient to create a genuine issue of material fact. Therefore, I find that Plaintiff has not met his initial burden of demonstrating a *prima facie* case of retaliatory discharge and Defendant is entitled to summary judgment on this issue.

Accordingly, it is ordered:

1. Defendant's motion for summary judgment (Docket No. 19) is granted.

2.  Defendant's motion to strike (Docket No. 41) filed March 26, 2007 is denied as moot.

DATED at Denver, Colorado, on September 30, 2007.

                                      BY THE COURT:

                                      s/ Walker D. Miller
                                      United States District Judge